UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| BEDO PINEDA INFANTI, ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | NOS. 2:07-CR-91 |
| ) |         2:09-CV-109 |
| UNITED STATES OF ) | |
| AMERICA, ) | |
|     Respondent. ) | |

**MEMORANDUM OPINION**

Bedo Pineda Infanti ("petitioner" or "Pineda Infanti"), a federal prisoner, has filed a "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 34]. The United States was directed to respond and its response was filed on November 2, 2010, [Doc. 44]. Petitioner replied on November 29, 2010, [Doc. 45]. The petitioner's request for an evidentiary hearing was granted on his claim of ineffective assistance of counsel for failure to file a notice of appeal and an evidentiary hearing was held on April 26, 2011. The petitioner has filed a post-hearing brief, [Doc. 51], and no further response has been filed by the government. The matter is, therefore, ripe for disposition.

The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and that an evidentiary hearing is not necessary with respect to his other claims. For the reasons which follow, the petitioner's § 2255 motion lacks merit and the motion will be DENIED.

**I.    Procedural and Factual Background**

Petitioner was initially charged on September 18, 2007, on a criminal complaint with the manufacture of 1,000 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1) and possession

of a firearm in furtherance of the drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A), [Doc. 1]. A four count indictment was returned by the grand jury on October 9, 2007, [Doc. 9]. The indictment charged petitioner with conspiracy to manufacture 1,000 or more marijuana plants, 21 U.S.C. § 846, 841(b)(1)(A) (Count 1); use and carry of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2); possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i) (Count 3); and possession of a firearm by an illegal alien, 18 U.S.C. § 922(g)(5)(A), 924(a)(2) (Count 4). On November 30, 2007, a plea agreement was filed in which petitioner agreed, among other things, to plead guilty to Count 1, which carried a ten year minimum mandatory term of imprisonment, Count 3, which carried a minimum mandatory term of imprisonment of five years to be served consecutively to the minimum mandatory sentence in Count 1, and Count 4, which carried a maximum term of imprisonment of ten years, [Doc. 14]. In other words, petitioner agreed to plead guilty to offenses which carried a 15 year minimum mandatory term of imprisonment.

On December 5, 2007, a change of plea hearing was conducted pursuant to Rule 11 and petitioner's pleas were accepted by the Court. A Presentence Investigation Report ("PSR") was prepared by the United States Probation Office and disclosed to the parties on March 3, 2008. Based on a criminal history category of I and a total offense level of 27, the PSR established a guidelines range for imprisonment of 70 to 87 months; however, because of the mandatory minimum sentences which applied, the guidelines range was a restricted range of 180 months. The petitioner was sentenced to 180 months of imprisonment on June 9, 2008, and judgment was entered on June 17,

2008, [Doc. 28]. No direct appeal was filed [1] and the instant motion was timely filed on June 8, 2009.

In his § 2255 motion, petitioner raises three claims of ineffective assistance of counsel: (1) failure to file a notice of appeal; (2) failure to assure a knowing and voluntary guilty plea; and (3) failure to file a motion for downward departure. Petitioner claims that he specifically directed his attorney to file an appeal and that counsel did not do so. He also alleges, apparently alternatively, that "counsel was obligated to at least consult with the petitioner about the availability and prudence of an appeal." Petitioner claims that his guilty plea was not voluntary and knowing because: (1) he "was never told that he had the right under '*Booker*' for the Court of Appeals to review his sentence for . . . reasonableness;" (2) he was not told of his "right" to have the Court consider the 18 U.S.C. § 3553(a) factors; (3) he was never told of the consequences of his guilty plea; and (4) that counsel told him that if he would plead guilty, he would receive a sentence of no more than five years. Finally, the petitioner argues that counsel was ineffective for failing to seek a downward departure under USSG § 3B1.2 for his minimal or minor role in the offenses and because he was safety valve eligible under USSG § 5C1.2.

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. §

---

[1] The Court received a letter from petitioner on November 3, 2008, expressing his belief that he had been sentenced to five years imprisonment and his surprise, based on receipt of "a letter in October of 2008," that his sentence had gone from five to twelve years, [Doc. 32]. The letter was treated as a motion to reduce sentence and was denied, [Doc. 33].

2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist

on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S.

5

365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## III. Analysis and Discussion

### A. Failure of Counsel to File Notice of Appeal

As set forth above, to establish a claim of ineffective assistance of counsel, the petition must prove that his counsel's performance was deficient and that the deficiency prejudiced him. *Strickland*, 466 U.S. at 687. The *Strickland* analysis applies to claims that the attorney's deficient performance led to the forfeiture of a direct appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).

Prejudice is shown when there is a reasonable probability that, but for counsel's deficient performance, petitioner would have timely appealed. *Id.* at 483-84; *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998).

The Supreme Court in *Roe* refused to adopt a *per se* rule that would require an attorney to file an appeal unless specifically directed not to do so, but instead affirmed that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe*, 528 U.S. at 477; *see also Regalado v. United States*, 334 F.3d 520, 523-24 (6th Cir. 2003). Absent specific instructions to file an appeal, the relevant inquiry is "whether the attorney 'consulted' with the defendant about the benefits and drawbacks of bringing an appeal." *Regalado*, 334 F.3d at 525. When an attorney has consulted with the defendant, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to the appeal." *Roe*, 528 U.S. at 478. If counsel has not consulted with the defendant, then the relevant inquiry becomes whether the failure to consult constituted deficient performance. Counsel's failure to consult is not necessarily professionally unreasonable. *Id.* at 480. A "constitutionally imposed duty to consult with the defendant about an appeal [arises] when there is reason to think either (1) that a rational defendant would want to appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.*

Although petitioner alleges in the memorandum filed in support of his motion that he specifically instructed counsel to file a notice of appeal, his testimony at the evidentiary hearing was far from clear, and was in fact confusing, on that point. Initially, petitioner claimed that he called his attorney and told him to appeal and to come and see him at the jail but that he was transferred

7

to Texas[2] before his attorney came. While petitioner did not specifically identify the date of the call, he did testify that it was from "jail" and that he was transferred to Texas 18 days after sentencing. On cross examination, however, petitioner acknowledged that he "tried to call" his attorney after sentencing and that he wrote no letter to his attorney requesting that he file a notice of appeal. (In his reply, [Doc. 45, p. 4], petitioner claims he wrote two letters asking that a notice of appeal be filed). He further acknowledged that he did not speak to his attorney or leave a message and he acknowledged that he was advised by the Court of his right appeal[3] but never contacted the Court.[4] Petitioner's attorney at the time of sentencing, R. Alexander Brown, also testified at the hearing and his testimony was the polar opposite of that of the petitioner. It was clear and unequivocal. Brown had been appointed by the Court to represent petitioner after he signed the plea agreement and entered his guilty pleas but before sentencing. After his appointment, Brown met with petitioner for a significant length of time, along with an interpreter, read the plea agreement "word for word" to petitioner, discussed the plea agreement in detail because of petitioner's claim that he did not know what he had signed, explained the legal meaning of certain terms[5] and reviewed the appellate waivers contained in the plea agreement with the petitioner.[6]

---

[2] Petitioner was delivered to FCI Big Spring, Texas on October 2, 2008, [see Doc. 31].

[3] At the conclusion of the sentencing hearing, the Court advised the petitioner: "Pursuant to Rule 32 of the Federal Rules of Criminal Procedure the Court advises you that you may have the right to appeal the conviction and/or the resulting sentence in this case. A Notice of Appeal must be filed within 10 days of the entry of the judgment. If you request and so desire the Clerk of the Court can prepare and file the Notice of Appeal for you," [Doc. 36, Tr. of Sent., p. 12].

[4] In petitioner's reply, he refers to his November 2, 2008 letter as a request for information about filing an appeal. That letter, however, makes no request for such information and makes no reference to an appeal except for an acknowledgment that he remembered being told that he had the right to an appeal, [*see* Doc. 32]. In any event, the time for filing a notice of appeal had long since expired.

[5] Specifically, Brown testified that he explained to petitioner the legal meaning of the word "consecutively" used in paragraph 1(b) of the plea agreement, using the illustration of blocks of wood to show

8

"how one sentence could be stacked on the other."

[6] With respect to the plea waivers contained in the plea agreement, the following exchange took place at the change of plea hearing:

> THE COURT: Ms. Hebets, has the defendant waived any appeal rights or rights to file a section 2255 motion in this plea agreement?
>
> MS. HEBETS: Yes, Your Honor, and those waivers are contained in paragraph 14 of the plea agreement.
>
> Q. Alright. Mr. Pineda, do you understand that under your plea agreement with the government you have expressly waived certain rights to appeal or to collaterally attack your conviction and/or your sentence in this case?
>
> A. Yes.
>
> Q. And when this plea agreement was read to you, did you listen very carefully to the reading of paragraph 14 of your plea agreement?
>
> A. Yes, yes, I did.
>
> Q. Do you understand that under paragraph 14A of this plea agreement you have expressly waived or given up any right to file a direct appeal of either your conviction or your sentence as long as that sentence is imposed within the applicable guideline range as determined by the Court?
>
> A. Yes.
>
> Q. Do you also understand that under paragraph 14B of your plea agreement you have waived the right to file any motions or pleadings pursuant to Title 28, United States Code, Section 2255, or to collaterally attack your conviction and/or the resulting sentence on any grounds except for claims of ineffective assistance of counsel or prosecutorial misconduct which are not known to you by the time of the entry of judgment?
>
> A. Yes.
>
> Q. Now, has Mr. Moore fully explained these waivers of your rights to appeal and your right to collaterally attack your conviction or your sentence to you?
>
> A. Yes.

Even though petitioner was not pleased with the statutory mandatory minimum, he advised his attorney that he did not wish to move to withdraw from the plea agreement and take the case to trial. Significantly, Brown testified unequivocally that petitioner never indicated, before, at the time of, or after sentencing, that he wished to appeal. Brown also testified that, had he been requested to do so, he would have filed the notice of appeal. The Court credits Brown's testimony fully.

Having determined that petitioner never specifically directed his attorney to file a notice of appeal, it follows that Brown could not have acted "in a manner that is professionally unreasonable" in that regard. That is not the end of the Court's inquiry, however. Given petitioner's alternative claim that counsel was ineffective by failing to further consult with the petitioner about an appeal, the Court must determine whether it was professionally unreasonable for Brown to fail to do so. Brown acknowledged that he never consulted with petitioner about an appeal after sentencing. Brown also testified that he never had contact with petitioner after the sentencing hearing, except for a couple of letters from petitioner asking for information.

Based on the evidence in the record, this Court concludes that Brown's failure to further consult with petitioner about an appeal was not professionally unreasonable and that Brown had no reason to think that petitioner or any rational defendant would want to appeal or that petitioner did

---

> Q. And have you and he fully discussed this waiver of your rights to appeal or to collaterally attack your conviction or your sentence?
>
> A. Yes.
>
> Q. And has Mr. Moore answered all questions you had about these waivers?
>
> A. Yes.

[Doc. 38, pp. 16-17].

anything to reasonably demonstrate to counsel that he was interested in appealing. Pineda Infanti had agreed to a waiver of any direct appeal of his conviction and/or the resulting sentence in his plea agreement, except for some very limited circumstances, and he indicated, under oath, at the change of plea hearing that he understood the appellate waivers and had fully discussed them with counsel. Furthermore, petitioner was sentenced to the mandatory minimum sentence required by statute and he does not suggest even an arguably meritorious argument for appeal. Under the circumstances of this case, Brown would have had no reason to believe that petitioner wanted to file a notice of appeal, or that a rational defendant in his position would have desired to file the notice of appeal. Furthermore, this Court clearly advised Pineda Infanti of his right to file a notice of appeal and that the Clerk would file the notice for him, if he desired. Petitioner made no request of the Court at the conclusion of his sentencing hearing and never made any attempt to contact the Clerk to request the filing of a notice of appeal. Since petitioner has not proven that he gave any express instruction to Brown to file a notice of appeal, nor has he shown that Brown's failure to consult was professionally unreasonable under the circumstances, he cannot establish the deficient performance prong of *Strickland*.

### B. Knowing and Voluntary Nature of Guilty Plea

Here, petitioner claims that his guilty plea was not knowing and voluntary because he was not informed of his right to have his sentence reviewed for reasonableness by the Court of Appeals. This claim fails for very obvious reasons. First of all, the Court advised petitioner of his right to appeal his sentence, as he acknowledged in his letter to the Court. At the conclusion of petitioner's sentencing hearing, the Court specifically advised petitioner of his right to appeal his sentence, *see* fn. 3. Additionally, petitioner points to no authority which requires the Court to specifically advise

11

him of his right, not just to appeal his sentence, but also to have it reviewed for "reasonableness." Rule 32(j)(1)(B) of the Federal Rules of Criminal Procedure only requires that the Court "advise the defendant of any right to appeal the sentence," but clearly does not require the Court to identify for the defendant any potential grounds for such appeal. Rule 32 was fully complied with here.

Next, petitioner argues that he was never told of his "right" to have the Court consider the factors set forth at 18 U.S.C. § 3553(a) before imposing sentence. Again, the record refutes petitioner's claim. He was advised specifically at the change of plea hearing that the Court would "consider all the factors set forth at Title 18, United States Code, Section 3553(A) in determining an appropriate sentence" and petitioner acknowledged that he understood that, [see Doc. 38, Tr. of Proc., pp. 18-19]. More importantly, Pineda Infanti was advised at the time of the change of plea that the Court would be "required to impose at least a 15 year mandatory term of imprisonment," [*Id.*, p. 15]. Again, he acknowledged his understanding of that. At the sentencing hearing, the Court noted that because of the mandatory minimum required by statute, the only review of the 3553(a) factors was for the purpose of determining whether there existed a "factor which warrants a sentence in excess of the statutory mandatory minimum sentence," [see Doc. 36, Tr. of Sent., p. 9]. The Court advised petitioner that it felt application of the mandatory minimum sentence in his case produced a "harsh result" but that it had no discretion to impose a sentence below the mandatory minimum. Petitioner's argument is without any merit.

The petitioner also argues that his plea of guilty was not knowing and voluntary because he was not advised of the consequences of his guilty plea. Once again, that claim is completely refuted by the record. Petitioner's plea agreement, which he testified under oath had been read to him and explained to him by his attorney, [Doc. 38, p.7], provided that he faced a "minimum mandatory ten

12

years and not more than life" on Count 1, a "mandatory five year sentence up to life, which by statute must be served consecutively" on Count 3[7], and a maximum of "no more than ten years" on Count 4. Furthermore, as noted above, petitioner was advised by the Court that it would be "required" to impose the mandatory minimum sentence and could impose a life sentence, [see Doc. 38, p. 19]. Pineda Infanti acknowledged that he understood both. To the extent petitioner also alleges that he did not understand that a consequence of his guilty plea would be deportation, that too is contradicted by the record. Petitioner was specifically advised, and he acknowledged understanding, that his conviction of these felony offenses would cause him to be deported from the United States after he served his term of imprisonment, [*Id*., pp. 15-16]. This claim also lacks merit.

Lastly, petitioner argues that he was told by counsel that he could face a sentence of no more than five years. As set forth above, it is clearly established that petitioner understood both the mandatory minimum and the statutory maximum sentences which applied in this case, regardless of anything his lawyer may have told him. Also, counsel for petitioner[8] was asked at the change of plea hearing whether he had "made any representations to the defendant as to what sentence [the Court] might impose in this case" and he responded "No, Sir," [see Doc. 38, p. 20]. Petitioner took no issue with his attorney's statement.

More generally, the record of the change of plea hearing establishes conclusively that this Court scrupulously followed the requirements of Federal Rule of Criminal Procedure 11 and

---

[7] Although petitioner testified at the evidentiary hearing that he did not understand the legal meaning of the word "consecutively," that is refuted by the transcript of the change of plea hearing. In addition, Brown testified specifically at the evidentiary hearing that he explained the word's meaning to petitioner, see fn. 5 above. This Court credits Mr. Brown's testimony completely.

[8] Petitioner was represented at the time of the change of plea hearing by attorney Tim S. Moore, Federal Defender Services of Eastern Tennessee, Inc.

conducted a proper, clear and thorough plea colloquy and petitioner points to no alleged deficiency in the Court's compliance with the Rule. It is well established that "a trial court's thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous advice from the defendant's trial attorney that allegedly led to his misunderstanding the consequences of his guilty plea. *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993), *cert. denied*, 510 U.S. 1099 (1994). Any misinformation from petitioner's attorney, even if given, was cured by the Court's compliance with Rule 11. The petitioner cannot, therefore, meet the prejudice prong of *Strickland*.

### C. Downward Departure

Petitioner argues that counsel was ineffective by failing to seek a downward departure on two bases. First, he argues that he was entitled to a downward departure pursuant to USSG § 3B1.2 (mitigating role). Secondly, he argues that he was entitled to a downward departure pursuant to USSG § 5C1.2 (safety valve). Each of these claims fails for simple, straightforward reasons.

Under USSG § 3B1.2, a defendant's offense level is reduced by 4 levels if defendant was a "minimal participant in criminal activity" and by 2 levels if his participation was "minor." Importantly, however, the guidelines provision provides no basis for a downward departure from a statutory mandatory minimum sentence. If the petitioner were a "minimal" or "minor" participant in this criminal activity, his restricted guidelines range would not change–either way, his restricted guidelines range, based on the mandatory minimum, not the offense level, remained 180 months of imprisonment. Counsel was not deficient for failing to seek a downward departure under USSG § 3B1.2.

14

United States Sentencing Guidelines Section 5C1.2, commonly known as the safety valve, allows defendants who meet certain enumerated criteria to be sentenced "in accordance with the applicable guidelines without regard to any statutory minimum sentence." A defendant must meet five requirements: (1) Defendant does not have more than 1 criminal history point; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injury; (4) the defendant was not an organizer, leader, manager or supervisor of others or engaged in a continuing criminal enterprise; and (5) the defendant truthfully provides the government all information and evidence he has concerning the offenses before sentencing. USSG § 5C1.2. Petitioner's argument focuses on the fifth factor and he argues that he "fully cooperated with the government and gave such information to the best of his knowledge." The Court assumes, for the sake of this motion, that petitioner does in fact meet the fifth requirement and that he can also meet the first, third and fourth requirements. He cannot, however, meet the second, *i.e.*, that no firearm was possessed in connection with the offense.

Petitioner pled guilty to two offenses involving possession of firearms (Counts 3 and 4). He pled guilty to possessing a Glenfield Model 60 .22 long rifle and a Norinco MAC 90 7.62X39 rifle in furtherance of the conspiracy to manufacture marijuana. Petitioner admitted that he possessed both firearms, that he "had been recruited to guard the marijuana field" and that he was "given the rifle to protect the marijuana from bandits," [Doc. 14, ¶ 4]. Pineda Infanti clearly possessed a firearm in connection with these offenses and his argument that his lawyer was ineffective for failing to seek a downward departure under the safety valve is without merit. Counsel is not ineffective for failing to pursue a meritless issue. *Ludwig*, 162 F.3d at 459 ("counsel is not required to raise

meritless arguments to avoid a charge of ineffective assistance of counsel.").

## V. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

Because the Court granted an evidentiary hearing on one of petitioner's claims, counsel was previously appointed to represent him. Since a certificate of appealability is denied, the CJA

16

appointment of Francis L. Lloyd, Jr., Esquire, is hereby TERMINATED.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE